IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Exel, Inc., f/u/b/o Sandoz Inc. | Case No.: 2:10-CV-0994 |
| Plaintiff | Judge Graham |
| v. | Magistrate Judge Abel |
| Southern Refrigerated Transport, Inc. | |
| Defendant. | |

OPINION AND ORDER

This case involves an interstate shipment of goods allegedly stolen or lost while in the custody of Defendant Southern Refrigerated Transport, Inc. ("SRT"). Pending before the court are SRT's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and SRT's request for an oral hearing on its motion. As set forth below, the Court grants SRT's motion for judgment on the pleadings and denies SRT's request for oral hearing.

I.      Background

Exel is a freight broker (or, in its estimation, a company that "makes arrangements on behalf of its customers for the transport of cargo"). Complaint (Doc. No. 2) at ¶10. SRT "is a motor carrier, who provides transportation of cargo in interstate commerce." Complaint at ¶7. In 2007, Exel and SRT entered into a "Master Transportation Services Agreement" ("the Agreement") whereby SRT agreed to act as a motor carrier for the transportation of Exel's customers' cargo. Complaint at ¶9. Sandoz, Inc. was one of Exel's customers. Neither party has produced a copy of the Agreement to the court.

1

In late 2008, pursuant to the Agreement, SRT undertook to transport a shipment of Sandoz's pharmaceutical products ("the Shipment") from Mechanicsburg, Pennsylvania to Memphis, Tennessee.  Complaint at ¶11.  The Complaint suggests that bills of lading were issued for the Shipment, see e.g., Complaint at ¶¶42, 43, but neither party has produced a copy of those bills of lading to the court.  The SRT truck carrying the Shipment was "stolen or otherwise lost from an unsecured rest area" en route to its intended destination, and the Shipment was never recovered.  Complaint at ¶13.  Exel alleges that "[t]he value of the Shipment is $8,583,671.12."  Complaint at ¶12.  Exel further alleges that it submitted a claim to SRT (on behalf of Sandoz) for the value of the Shipment, see Complaint at ¶39, but that "SRT denied the claim [on the basis] that the recovery is subject to a limitation of liability found in the bills of lading issued for the shipments," Complaint at ¶40.

This action was filed thereafter by "**EXEL, INC. f/u/b/o [for the use and benefit of] Sandoz INC**."  Complaint caption (emphasis added.)  Exel alleges that Sandoz "has assigned all of its rights to Exel with regard to the recovery against SRT for the lost Shipment."  Complaint at ¶14.

The Complaint states a claim for breach of contract (count I), breach of bailment (count II), violation of the Carmack Amendment (count III), and relief under the Declaratory Judgment Act, 28 U.S.C. §2201 (count IV).  SRT has moved for judgment on the pleadings as to counts I, II, and IV, arguing that the Carmack Amendment preempts the contract and bailment claims and that the request for declaratory relief is moot.

## II.    SRT's Request for Oral Hearing

The court's local rules address the procedure for obtaining oral argument regarding a pending motion:

> [I]f oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented, counsel may apply to the Court for argument. This may be done by including the phrase "ORAL ARGUMENT REQUESTED" (or its equivalent) on the caption of the motion or on a memorandum. The ground(s) for any such request shall be succinctly explained. If the Court determines argument or a conference would be helpful, the Court will notify all parties.

S.D. Ohio Civ. R. 7.1(b)(2). The caption of SRT's reply brief includes the phrase "Oral Hearing Requested," but the brief does not explain the ground(s) for SRT's request. See generally SRT's Reply Brief in Support of Motion for Judgment on the Pleadings (Doc. No. 12). The court finds the motion suitable for disposition without oral argument and the request is therefore denied.

### III. SRT's Motion for Judgment on the Pleadings

#### A. Standard Involved

Rule 12 of the Federal Rules of Civil Procedure governs motions for judgment on the pleadings and provides, in pertinent part, "[a]fter the pleadings are closed but within such time as not to delay the trial any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) invokes the same standard of review as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Vickers v Fairfield Medical Ctr., 453 F.3d 757, 761 (6th Cir.2006). Pursuant to that standard, courts "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir.2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., "'and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir.2010) (quoting JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir.2007)).

Under Fed.R.Civ.P. 8(a)(2), a complaint must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." To satisfy this requirement and survive a Rule 12(c) motion, a complaint must supply enough facts to render a claim more than merely possible; it "must plead 'sufficient factual matter' to render the legal claim plausible ...." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009)). "[T]he plaintiff must provide the grounds for its entitlement to relief, Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir.2001), and that 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir.2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)), cert. denied, 131 S.Ct. 1047 (2011).

> B. **The Carmack Amendment**

The Carmack Amendment to the Interstate Commerce Act is the federal statutory regime governing interstate carriers' liability for property loss. See 49 U.S.C. §14706(a)(1). Section 14706(a)(1) provides in relevant part:

> A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States....

Congress's intent in enacting the Carmack Amendment was to provide a uniform, national remedy against carriers. See e.g., REI Transport, Inc v. C.H. Robinson Worldwide, Inc., 519 F.3d 693, 697 (7th Cir. 2008). Prior to the enactment of the Carmack Amendment, disparate schemes of carrier liability existed among the states; some states permitted full recovery while others allowed carriers to limit or disclaim liability. Id. (citing Adams Express Co. v. Croninger,

4

226 U.S. 491, 505 (1913)). "Under this patchwork of regulation, a carrier could be 'held liable in one court when under the same state of facts he would be exempt from liability in another' making it 'practically impossible for a shipper engaged in a business that extended beyond the confines of his own State ... to know ... what would be the carrier's actual responsibility as to goods delivered to it.'" REI Transport, Inc., 519 F.3d at 697 (quoting Adams Express Co., 226 U.S. at 505).

Since the enactment of the Carmack Amendment, a carrier of an interstate shipment is "liable to the person entitled to recover under the ... bill of lading" (often, the shipper) for damage to the property which occurs in transit. 49 U.S.C. §14706(a)(1). The person entitled to recover under the bill of lading has the option to file suit against either the originating carrier or the delivering carrier for the "actual loss or injury to the property caused" by any carrier in the course of the interstate shipment. Id. A carrier held liable on a bill of lading may then recover from the carrier over whose route the loss or injury occurred. See 49 U.S.C. §14706(b); see also Tempel Steel Corp v. Landstar Inway, Inc., 211 F.3d 1029, 1030 (7th Cir. 2000) ("A shipper may look to its chosen carrier, which then bears the responsibility for seeking compensation from another carrier actually responsible for the loss.")

Under the Amendment, the process of proof is simplified for shippers, who need only show delivery of the goods to the carrier in good condition, arrival in damaged condition, and the amount of damages caused by the loss,[1] see e.g., Plough, Inc. v. Mason & Dixon Lines, 630 F.2d

---

[1] Once the shipper establishes the three elements needed to make out a prima facie case under the Carmack Amendment, the carrier will be liable unless it can establish "both that it was free from negligence" and that the damage to the goods was caused by: "(a) the act of God, (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." Plough, Inc. v. Mason & Dixon Lines, 630 F.2d 468, 470 (6th Cir. 1980).

468, 470 (6th Cir. 1980), and for carriers seeking indemnity from other carriers, who need only present a receipt or judgment and the amount of their expenses incurred resolving the claim. See 49 U.S.C. §14706(b). "A shipper can thus be confident that the carrier will be liable for any damage that occurs to its shipment. And a carrier can accurately gauge, and thus insure against, any liability it may face when it agrees to carry something." REI Transport, Inc., 519 F.3d at 693.

      C.     **Preemptive Effect of the Carmack Amendment**

One of the ways that Congress ensured the national uniformity of this scheme of liability is by preempting state causes of action against carriers for damaged or lost goods. Adams Express Co., 226 U.S. at 505.[2] "A fundamental principle of the Constitution is that Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000). State law is preempted in three situations. Congress may preempt state law with an express provision for preemption, or Congress may implicitly preempt state law by field preemption or conflict preemption. Id. at 372-73. A federal statute will preempt state action in an entire field where "the scope of a statute indicates that Congress intended federal law to occupy a field exclusively." Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995).

The Supreme Court has consistently interpreted the Carmack Amendment as broadly occupying the entire interstate shipment field of commerce:

---

[2]Congress also ensured national uniformity by limiting the rights of carriers to contract away liability. See Adams Express Co., 226 U.S. at 505. Carriers cannot contract away liability for damaged shipments in their carrier agreements as they could before the Carmack Amendment came into effect. Liability under the Amendment is generally limited to the "actual loss or injury to the property," see 49 U.S.C. §14706(a)(1), and as one court has explained, "[a]side from one narrow exception ..., see 49 U.S.C. § 14706(c)(1)[], contractual terms purporting to limit a carrier's liability below the 'actual loss or injury to the property' are dead letters," see REI

6

> [The Carmack Amendment] supersedes all the regulations and policies of a particular state upon the same subject....It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.

Adams Express Co., 226 U.S. at 505-06; see also Georgia, Fl. & Ala. Railroad Co v. Blish Milling Co., 241 U.S. 190, 196 (1916) (holding that Carmack Amendment embraces "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation."); Arctic Exp., Inc. v. Del Monte Fresh Produce NA, Inc., 366 B.R. 786, 793-794 (S.D.Ohio 2007) (observing that "[t]he Adams Express Court ruled that all state and common law causes of action relating to services under the Carmack Amendment were preempted by the liability provisions within the Carmack Amendment").

Accordingly, the Sixth Circuit has held that the Carmack Amendment provides the exclusive means for a shipper or other entity entitled to recover under the bill of lading to recover for any damage to delivered goods or for negligent performance by a carrier. See W.D. Lawson & Co. v. Penn Cent. Co., 456 F.2d 419, 421 (6th Cir. 1972) ("As to...whether or not the Carmack Amendment preempted common law suits of the nature of the first count stated in this case [i.e., a shipper's suit for damages for violation of common carrier's contract for interstate carriage of goods]...,we hold that it did. We perceive no distinction between the nature of this count, or the relief sought thereunder, and that stated or sought under the federal statute."); American Synthetic Rubber Corp v. Louisville & Nashville Railroad Co., 422 F.2d 462, 466 (6th Cir. 1970) (referring to the "broad sweep" of the Carmack Amendment and holding that "when

---

Transport, Inc., 519 F.3d at 693.

damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage, the Carmack Amendment governs").[3]

The Sixth Circuit has not addressed, however, the question of whether state or common law claims by a broker, such as Exel, against a carrier, such as SRT, fall within this preemptive sweep. Courts outside the circuit have "drawn limits to [Carmack] preemption where brokers had independent relationships with [carriers]." Dominion Resource Services, Inc v. 5K Logistics, Inc., No. 3:09-cv-315, 2010 WL 679845, *4 (E.D. Va. Feb. 24, 2010); see Intransit, Inc. v. Excel North American Road Transport, Inc., 426 F.Supp.2d 1136, 1141 (D. Ore. 2006); Edward Bros., Inc. v. Overdrive Logistics, Inc., 581 S.E.2d 570, 572 (Ga. Ct. App. 2003); Transcorr National Logistics, LLC, v. Chaler Corp., No. 1:08-cv-00375, 2008 WL 5272895, *4 (S.D. Ind. Dec. 19, 2008).

For example, in Intransit, Inc. the court determined that the Carmack Amendment did not preempt the plaintiff-broker's claims against the defendant-carrier for contractual indemnity and breach of the parties' brokerage agreement. Intransit, Inc., 426 F.Supp.2d at 1141. In that brokerage agreement, the carrier had "agreed to indemnify [the broker] for all losses or damage arising from [its] transportation services." Id. at 1138. After the carrier failed to deliver a load of goods for one of the broker's customers and that customer deducted the value of the load from

---

[3] Courts have determined that the result is the same if the state or common law cause of action is filed on behalf of the shipper or other person entitled to recover under the bill lading and/or through an assignment of a claim or by subrogation. See e.g., Great West Cas. Co. v. Flandrich, 605 F.Supp.2d 955, 966-67 (S.D.Ohio 2009) (breach of contract claims alleged by meat shipper's insurer against carrier seeking damages for spoiled meat were preempted by Carmack Amendment); see also Travelers Indem. Co v. Schneider Specialized Carriers, Inc., No. 04 Civ. 5307(RJH), 2005 WL 351106, *6 (S.D.N.Y. Feb. 9, 2005) (rejecting argument that insurer, as subrogee to the consignee, was not bound by the Carmack Amendment and finding insurer's claims for negligence, recklessness, breach of contract, breach of bailment, and breach of the Uniform Commercial Code preempted by the Amendment).

amounts it owed to the broker, the broker filed a state court action against the carrier, seeking to recover the setoff amount under the indemnity clause of the brokerage agreement. Id. The carrier sought removal of the case to federal court, arguing that because the broker was seeking to recover from the carrier for damages resulting from an alleged failure to deliver goods, its claims necessarily arose under the Carmack Amendment. Id. at 1140.

The court concluded that the broker's claims were not preempted (and accordingly remanded the case to state court) because "[those claims were] for direct contractual indemnity and not from an assignment of rights by the shipper .... This action is sufficiently removed from a shipper or some other party who has rights under the bill of lading to sue a carrier for damage to goods shipped." Id. at 1141; see also Edward Bros., Inc v. Overdrive Logistics, Inc., 581 S.E.2d 570, 572 (Ga. Ct. App. 2003) (broker could bring suit on separate contract by which carrier agreed to indemnify broker for "any loss or damage"); Chaler Corp., 2008 WL 5272895, *1 (broker could sue on basis of separate contract by which carrier agreed to indemnify broker where it was clear that "[broker] could not reasonably be the holder of the bill of lading, nor is [broker] suing on behalf of or taking over the claim of its shipper-customer").

The district court in Dominion Resource Services also addressed the question of whether a plaintiff-broker's state law claim, a claim premised on an alleged breach of a separate broker-carrier agreement, was preempted by the Carmack Amendment. Dominion Resource Services, Inc v. 5K Logistics, Inc., 2010 WL 679845, *4. But in contrast to the courts in Intransit, Edward Bros., and Chaler Corp., the court in Dominion Resource Services found that the broker's claim was preempted and accordingly, granted the carrier summary judgment as to that claim. Id at *5.

The court in Dominion Resource Services began its analysis by stating that "the scope of Carmack Amendment preemption follows 'the duties arising from the commitment of goods to the custody of [a carrier] for shipment' it does not preempt claims based on obligations independent of the shipper-carrier relationship." Id. at *4 (quoting Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 705-706 (4th Cir. 1993)).

The court then turned to the source of the parties' obligations, the Rate Agreement. Dominion Resource Services, Inc v. 5K Logistics, Inc., 2010 WL 679845, *4. That Rate Agreement, the court observed, "simply states that [the defendant-carrier] agreed to transport certain goods between certain places at certain times for certain amounts" but does not state any "separate contractual obligations for [the carrier] to breach, independent of its obligations as a carrier." Id. The court contrasted the Rate Agreement before it with the brokerage agreements at issue in Intransit, Inc. and Edwards Bros., which contained at least one obligation independent of the shipper-carrier relationship–the carrier's obligation to indemnify the broker for any loss or damage. Id. The court did not discuss Chaler Corp. although the brokerage agreement in that case similarly obligated the carrier to "defend, indemnify, and hold [the plaintiff-broker] harmless from and against all loss, liability, damage, claim, fine, cost or expense ... arising out of or in any way related to the performance or breach of this Agreement by [the defendant-carrier.]" Chaler Corp., 2008 WL 5272895, *1.

Because the Rate Agreement in Dominion Resource Services provided "no separate contractual obligations for [the carrier] to breach, independent of its obligations as a carrier," the court concluded that "[the broker's] contract claim must be preempted by the Carmack Amendment." Dominion Resource Services, 2010 WL 679845, *4 (citing Shao, 986 F.2d at 705). Accordingly, a broker's state or common law claim cannot survive preemption simply

10

because it is based on an alleged breach of a separate broker-carrier agreement. In order to survive, the claim must be based on the carrier's alleged breach of a contractual obligation independent of its obligation as a carrier, for example, an obligation to indemnify the broker.

### D. Preemption of Exel's Breach of Contract and Breach of Bailment Claims

In support of its argument that the Carmack Amendment does not preempt its contract and bailment claims, Exel first directs the court to three decisions which it contends stand for the proposition that "the Carmack Amendment does not apply to transportation brokers." See Exel's Memorandum in Opposition to SRT's Motion for Judgment on the Pleadings (Doc. No. 10), page 6 (citing FNS, Inc v. Bowerman Trucking, Inc., No. 09-cv-0866, 2010 WL 532421 (S.D. Cal. Feb. 9, 2010); Ensco, Inc v. Weicker Transfer and Storage Co., 689 F.2d 921 (10th Cir. 1982); PNH Corp v. Hullquist Corp., 843 F.2d 586 (1st Cir. 1988)). More accurately, however, the cited decisions stand for the proposition that the liability provisions within the Carmack Amendment do not apply to brokers and therefore, a broker is not a proper defendant in a Carmack Amendment cause of action. See e.g., FNS, Inc., 2010 WL 532421, *3 (the Carmack Amendment imposes "strict liability for 'actual loss or injury to property'….[on only] two parties…: 'carriers' and 'freight forwarders.' The Carmack Amendment does not apply to parties who are neither carriers nor freight forwarders; for example, it does not apply to brokers."); see also Ensco, Inc., 689 F.2d at 925; PHN Corp., 843 F.2d at 590-1. Contrary to Exel's suggestion none of the cited cases even address the question of whether a plaintiff-broker's state or common law cause of action against a defendant-carrier can survive Carmack preemption.

Exel next contends that "all of the case law on point has held that Carmack does not

11

preempt the transportation broker's claims when there exists a brokerage agreement executed by a broker and carrier." Memorandum in Opposition, page 6. In support of this contention, Exel directs the court to the Intransit, Inc., Edward Bros., and Chaler Corp. decisions. Exel does not address the Dominion Resource Services decision. Exel argues that in accordance with Intransit, Inc., Edward Bros., and Chaler Corp. its breach of contract and breach of bailment claims, which stem from SRT's alleged breach of the parties' brokerage Agreement, must survive Carmack preemption.

As an initial matter, there is no indication, in any of the cases Exel relies upon, that the plaintiff-brokers in those cases were pursuing claims on behalf of the shippers and/or pursuant to an assignment from the shippers. In fact, the court in both Intransit, Inc. and in Chaler Corp. was careful to emphasize that the opposite was true – i.e., that the plaintiff-broker was pursuing claims on its own behalf. See Intransit, Inc., 426 F.Supp.2d at 1141 (broker's claims "[were] for direct contractual indemnity and not from an assignment of rights by the shipper"); Chaler Corp., 2008 WL 5272895, *1 (plaintiff-broker was not "suing on behalf of or taking over the claim of its shipper-customer"). Here, however, there are indications that the claims are being asserted on behalf of Sandoz and/or through an assignment by Sandoz. The Complaint caption specifically provides that this case, in its entirety, is being prosecuted by "EXEL, INC., f/u/b/o [for the use and benefit of] Sandoz, INC." Moreover, in the preliminary "FACTS" section of the Complaint, Exel alleges that "Sandoz … has assigned all of its rights to Exel with regard to the recovery against SRT for the lost Shipment." Complaint at ¶14.[4] Based on these facts, this case is distinguishable from the cases upon which Exel relies.

---

[4] This "assignment allegation" is specifically incorporated into both the breach of contract and bailment counts in the Complaint. See Complaint at ¶15, ¶21.

Moreover, Exel's argument against preemption also incorrectly assumes that a broker's claim survives preemption simply because it is based on an alleged breach of a separate broker-carrier agreement. Instead, a broker's claim survives preemption only if it is based on the carrier's breach of a separate contractual obligation "independent of its obligation as a carrier." See Dominion Resource Services, 2010 WL 679845, *5. Neither Count I nor Count II of Exel's Complaint, however, direct the court to a separate contractual obligation of SRT "independent of its obligation as a carrier," at least as that term was defined in Dominion Resource Services. For example, in Count I Exel alleges that SRT breached its contractual obligation to safely transport the Shipment to its intended destination, see Complaint at ¶19, but the court in Dominion Resource Services specifically held that a carrier's obligation to transport goods is not a separate obligation independent of its obligation to act as a carrier. See Dominion Resource Services, 2010 WL 679845, *5. Exel also alleges that SRT breached its obligation to store the loaded container carrying the Shipment in a secured lot. See Complaint at ¶19. The obligation to securely store a shipment of goods during transport is consistent with, rather than independent of, a carrier's obligation to act as a carrier.

Unlike the plaintiff-brokers in Intransit, Inc., Edward Bros., and Chaler Corp., Exel has not premised its common law claims on the alleged breach of a contractual obligation independent of the shipper-carrier relationship, such as the obligation to indemnify. Exel does allege elsewhere in the Complaint (specifically, in Count IV) that the parties' Agreement contains the following language:

    9.    Liabilities and Claims for Commodities

    (a)    Carrier shall be liable to Customer for loss, damage, or injury to the Commodities tendered to Carrier for transportation hereunder while the

> Commodities are in its, its agent or underlying carrier's custody, possession or control....

Complaint at ¶43 (emphasis added). Exel then suggests in its opposition brief that this language obligates SRT to indemnify Exel for the loss of the Shipment, see Exel's Memorandum in Opposition, page 3 ("As a result of SRT's breach of the Agreement, Exel seeks replacement value damages as provided for in the Agreement, paragraph 9: ... '[SRT] shall be liable to [EXEL] for loss, damage or injury to the Commodities tendered to [SRT] for transportation hereunder...."), although it remains unclear whether the Agreement defines "Customer" to include Exel, and of course, without a copy of the Agreement, the court cannot verify this for itself.

Based on the above, the court concludes that Exel has not pleaded sufficient facts to plausibly suggest a cause of action for breach of contract or bailment based on obligations independent of the shipper-carrier relationship. See Fritz, 592 F.3d at 722 (to satisfy Fed.R.Civ.P. 8(a)(2) and survive a Rule 12(c) motion, a complaint must supply enough facts to render a claim more than merely possible; it "must plead 'sufficient factual matter' to render the legal claim plausible ....") (quoting Ashcroft v. Iqbal, 129 S.Ct. at 1949-50). SRT is accordingly entitled to judgment as to Counts I and II of Exel's Complaint.

### E. Motion for Judgment as to Exel's Request for Declaratory Relief

In Count IV of its Complaint, Exel seeks relief under the Declaratory Judgment Act, 28 U.S.C. §2201. Specifically, Exel seeks a declaration that the value of the lost Shipment should be determined according to the terms of the broker-carrier Agreement rather than the terms of the bill of lading. See e.g., Complaint at ¶47. Again, the parties have not produced the Agreement or the applicable bill(s) of lading to the court, although Exel alleges in Count IV that the

14

Agreement provides that in the event of a conflict between its terms and the terms of any bill of lading, the terms of the Agreement "shall govern." Id. at ¶44. Exel further alleges that the Agreement calls for recovery in the amount of the "Shipper's replacement value." Id. at ¶43.[5]

SRT asks the court to decline to consider Exel's declaratory judgment claim. The Declaratory Judgment Act is "'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). In deciding whether to entertain a declaratory judgment action, the court should consider: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase the friction between federal and state courts or improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. See Bituminous Casualty Corp v. J&L Lumber Co., 373 F.3d 807, 813 (6th Cir. 2004).

As the previous section indicates, SRT is entitled to judgment in its favor as to Count I and II of the Complaint. Count III of the Complaint regarding SRT's alleged liability under the Carmack Amendment remains viable. After considering the above-cited criteria, the court finds that "[a] declaratory judgment is unnecessary to the resolution of this case, which will focus

---

[5] SRT admits that "[a]n actual controversy…exists between the parties with regard to the determination of the value of the lost Shipment." Complaint at ¶41; see also Answer (Doc. No. 3) at ¶37. It is SRT's position that any recovery for the lost Shipment "is subject to a limitation of liability found in the bill of lading, which is the contract of carriage for this [S]hipment." Id. at ¶40; see also Answer at ¶36; SRT's Reply Brief, page 5, fn. 2.

upon the parties' obligations to one another under the shipping contracts in light of applicable federal law." Schoenmann Produce Co. v. BNSF Railway Co., No. H-07-1776, 2008 WL 336296, *4 (S.D. Tex. Feb. 5, 2008) (declining to entertain plaintiff-shippers' request for a declaratory judgment concerning the parties' rights and responsibility under fully performed contracts governed by the Carmack Amendment).

A declaration concerning the amount of damages owed for the lost Shipment would not settle the controversy giving rise to this proceeding because it would not address the initial question of whether SRT is, in the first place, liable under the Carmack Amendment for the loss of that Shipment.[6] Nor would a declaratory judgment serve a useful purpose in clarifying the legal relations at issue. Cf. Mayflower Transit v. Troutt, 332 F.Supp.2d 971, 979, 981 (W.D. Tex.2004) (declaratory judgment would "clarify and settle legal relations in issue" where declaration would have the likely effect of preventing future litigation by clarifying any outstanding duties the plaintiff-carrier owed to the defendant-shipper and would also stop damages from accruing while defendant-shipper considered filing its own suit against the

---

[6]SRT generally denies all the allegations set forth in the "Carmack Amendment Count" (Count III) of Exel's Complaint. See Answer ¶¶ 20-24. That being said, SRT has stated elsewhere that it has "accepted responsibility for the lost cargo claim, though SRT's liability is limited to the per pound limit of liability set forth in the bill of lading[.]" Reply brief, page 5, fn. 2 (emphasis added.); see also Answer, ¶27 (SRT denies the allegation that it rejected Exel's demand, made prior to the start of this lawsuit, that SRT accept responsibility for the lost cargo, but admits that it informed Exel that any recovery would be subject to a limitation of liability found in the bill of lading).

Even if there is no dispute between the parties regarding SRT's liability under the Carmack Amendment and the only remaining question relates to the amount of damages owed under the Amendment, "a declaratory judgment [concerning the amount of damages owed] would be redundant to the relief already sought for [violation of the Carmack Amendment]." Florists' Transworld Delivery, Inc. v. Fleurop-Interflora, 261 F.Supp.2d 837, 847 (E.D. Mich. 2003) (declining to entertain plaintiff's claim for relief under the federal Declaratory Judgment Act where declaratory judgment would be redundant to other relief sought by the plaintiff).

plaintiff-carrier). There is no indication that Exel seeks declaratory judgment merely for the purpose of procedural fencing, and encroachment on state court jurisdiction is not an issue. However, the court finds that Count III of the Complaint, which seeks relief under the Carmack Amendment, provides a better and more effective alternative remedy. Therefore, this court determines, in its discretion, that it will not entertain the declaratory judgment claim asserted by Exel.

IV. **Conclusion**

Based on the foregoing analysis, SRT's motion for judgment on the pleadings (Doc. No. 6) is granted and SRT's request for an oral hearing (Doc. No. 12) is denied.

It is so ORDERED.

s/ James L. Graham
James L. Graham
UNITED STATES DISTRICT JUDGE

Date: December 15, 2011