**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Exel, Inc., f/u/b/o Sandoz, Inc.

                Plaintiff,

   v.

Southern Refrigerated Transport, Inc.

                Defendant.

Case No. 2:10-cv-994

Judge Graham

Magistrate Judge Abel

<u>OPINION AND ORDER</u>

      This case is before the Court on the parties' cross motions for summary judgment.  The Court heard oral argument on the motions on May 23, 2012.

      Plaintiff Exel, Inc. ("Exel") is a freight broker who arranged for a shipment of pharmaceutical products by Defendant Southern Refrigerated Transit, Inc. ("SRT"), an interstate motor carrier.  The pharmaceuticals were being shipped by their manufacturer, Sandoz, Inc., a customer of Exel.  The pharmaceuticals were lost or stolen while in the custody of SRT.  In this action, Exel seeks to recover the alleged replacement value of the pharmaceuticals, $8.5 million, from SRT.  SRT asserts that its liability for the loss of the shipment is limited to $56,766.36 under the terms of bills of lading prepared by Exel.

      The Court has viewed this case as one in which Exel stands in the shoes of the shipper Sandoz with rights no greater than those which could be asserted by Sandoz.[1]  <u>See</u> Opinion and Order ruling on Plaintiff's motion for judgment on the pleadings, Dec. 15, 2011.  It appears that SRT has shared this view and prepared its defense accordingly.

      At the hearing on the motions for summary judgment, Exel asserted that in addition to the rights

---

[1] The caption of the complaint designates the plaintiff as "EXEL, INC., f/u/b/o Sandoz INC."  In paragraph 14 of the complaint, Exel alleged that Sandoz "has assigned all of its rights to Exel with regard to the recovery against SRT for the lost Shipment."

assigned to it by Sandoz, it was also asserting separate and additional rights it claims to have under an agreement it entered into with SRT entitled "Master Transportation Services Agreement" ("MTSA"). Such an agreement was referred to in SRT's memo on the Defendant's motion for judgment on the pleadings, but as the Court noted in its Opinion and Order of December 15, 2011, this alleged agreement was not attached to the complaint and the Court found that Plaintiff had failed to plead sufficient facts to "plausibly suggest a cause of action for breach of contract or bailment based on obligations independent of the shipper-carrier relationship."  The Court granted SRT's motion to dismiss all of Plaintiff's claims that fell outside the Carmack Amendment, the federal law which governs the liability of carriers to shippers.  This effectively limited Exel's action to claims that could be asserted by Sandoz.  In the aftermath of the decision, Exel did not seek leave to amend its complaint to assert a breach of contract claim based on its rights under the alleged MTSA.

Now, at the Summary Judgment stage, Exel attempts to assert its individual rights under the MTSA and now the MTSA has been made part of the record–although like the proverbial needle in the haystack it nearly escaped the Court's attention.  See Doc. 31, Attachment 1, Exhibit A.

The Court has examined the MTSA and finds that it does contain language which may create obligations independent of the shipper-carrier relationship which may fall outside the governance of the Carmack Amendment.  See Paragraph 4, "RECEIPTS AND BILLS OF LADING":

> Customer shall issue and Carrier shall sign freight receipts for each shipment in the form acceptable to Customer and the Shipper.  If a bill of lading is used as a freight receipt, any terms, conditions or provisions thereof shall be subject and subordinate to the terms of this Agreement and, in the event of a conflict, this Agreement shall govern.  Carrier's or Carrier's agent signature on the receipt or bill of lading shall be prima facie evidence that the Commodities were received in good condition unless otherwise noted on the face of such document.

See Paragraph 9, "LIABILITIES AND CLAIMS FOR COMMODITIES":

> a)    Carrier shall be liable to Customer for loss, damage or injury to the Commodities tendered to Carrier for transportation hereunder while the Commodities are in its, its agent [sic] or underlying carrier's custody, possession or control except to the extent (and only to the extent) such loss, damage or injury results from (i) acts of God, the public enemy or public authority, (ii) inherent vice or nature of the Commodities, or (iii)

the negligent acts of Customer or Shipper.

b)    The measurement of the loss, damage or injury to Commodities shall be the Shipper's replacement value applicable to the kind and quantity of Commodities so lost, damaged or destroyed. Customer shall deduct from the invoice price the reasonable salvage value of any damaged or injured Commodities not released to Carrier. Carrier acknowledges that some of the Commodities may be disposed of in a manner that will prevent the damaged goods from being sold on the open market.

The Court has also re-examined the complaint and noted that in its claim for declaratory judgment Exel did articulate a claim of individual rights under the MTSA. These factual allegations would be sufficient to support a claim for breach of contract. Finally, the Court is reminded of the rubric that it should consider the facts alleged and not the labels of the claims in deciding whether a cause of action has been stated.

The Court hereby *sua sponte* reconsiders its Opinion and Order of December 15, 2012 and amends that order to find that Plaintiff has alleged a claim for breach of contract based on the provisions of the MTSA, which may not be preempted by the Carmack Amendment.

In light of this ruling, the Court will entertain additional briefing on the motions for summary judgment. Each party shall file supplemental briefs in support of their respective motions on or before June 25, 2012 and both shall file their reply briefs on or before July 10, 2012.

It is so ORDERED.


                     s/ James L. Graham
                     JAMES L. GRAHAM
                     United States District Judge

DATE: May 25, 2012