IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Exel, Inc., f/u/b/o Sandoz Inc. | Case No.: 2:10-cv-994 |
| Plaintiff | Judge Graham |
| v. | Magistrate Judge Abel |
| Southern Refrigerated Transport, Inc. | |
| Defendant. | |

**OPINION AND ORDER**

This case is before the Court on its *sua sponte* reconsideration of the Opinion and Order of December 15, 2011 (doc. 24). That order granted defendant Southern Refrigerated Transport, Inc.'s (SRT) motion for judgment on the pleadings as to counts I, II, and IV and held that the Carmack Amendment preempts the plaintiff's contract and bailment claims. The Court subsequently ordered supplemental briefing on whether the plaintiff's claim for breach of contract is preempted by federal law. (Doc. 49.) Also before the Court are the parties' cross motions for summary judgment, on which the Court heard oral argument on May 23, 2012.

**I.      Background**

Plaintiff Exel, Inc. (Exel) is a freight broker that arranges for "the transportation of general commodities on behalf of it's (sic) customers, who are shippers of commodities." (Complaint, Doc. 2 ¶ 6.) Defendant SRT is a "motor carrier, who provides transportation of

cargo in interstate commerce." (Doc. 2 ¶ 7.) Non-party Sandoz, Inc. (Sandoz) is a manufacturer of pharmaceutical products. Sandoz was one of the customers for whom Exel arranged interstate transportation services.

In late 2007, Exel and SRT entered into a "Master Transportation Services Agreement" ("the master agreement") whereby SRT agreed to act as a motor carrier for the transportation of Exel's customers' cargo. The non-exclusive agreement was effective as of January 1, 2008. (Master Agreement, Doc. 31-1, Attachment A.) The master agreement provided that Exel would issue and SRT sign freight receipts for each shipment. Id. ¶ 4, "RECEIPTS AND BILLS OF LADING":

> Customer [Exel] shall issue and Carrier shall sign freight receipts for each shipment in the form acceptable to Customer and the Shipper. If a bill of lading is used as a freight receipt, any terms, conditions or provisions thereof shall be subject and subordinate to the terms of this Agreement and, in the event of a conflict, this Agreement shall govern. Carrier's or Carrier's agent signature on the receipt or bill of lading shall be prima facie evidence that the Commodities were received in good condition unless otherwise noted on the face of such document.

The master agreement also purports to make SRT liable to Exel for any lost shipment, and to establish the measurement of that liability. Id. ¶ 4, "LIABILITIES AND CLAIMS FOR COMMODITIES":

> a) Carrier shall be liable to Customer for loss, damage or injury to the Commodities tendered to Carrier for transportation hereunder while the Commodities are in its, its agent or underlying carrier's custody, possession or control except to the extent (and only to the extent) such loss, damage or injury results from (i) acts of God, the public enemy or public authority, (ii) inherent vice or nature of the Commodities, or (iii) the negligent acts of Customer or Shipper.
> b) The measurement of the loss, damage or injury to Commodities shall be the Shipper's replacement value applicable to the kind and quantity of Commodities so lost, damaged or destroyed. Customer shall deduct from the invoice price the

>reasonable salvage value of any damaged or injured Commodities not released to Carrier.  Carrier acknowledges that some of the Commodities may be disposed of in a manner that will prevent the damaged goods from being sold on the open market.

In November, 2008, Exel requested that two SRT trucks be dispatched to transport a shipment of Sandoz's pharmaceutical products from Mechanicsburg, Pennsylvania to Memphis, Tennessee.  (Doc. 2 ¶ 11.)  Sandoz's products were placed on two SRT trucks.  Plaintiff alleges that one of these trucks was lost or stolen and the shipment was never recovered.  (Doc. 2 ¶ 13.)  The alleged loss of that shipment forms the basis for this lawsuit.

Five individual bills of lading were issued for the shipment.  (See Doc. 29-2, Attachments A-1 – A-5.)  Each bill of lading bears the heading "BILL-OF-LADING – SHORT FORM – Not Negotiable."  Id.  The bills of lading were prepared by "Exel's system based upon the specific shipment being moved." (Plaintiff's Answers to Interrogatories, Doc. 29-3 at 3.)  The bill of lading states that "every service performed here-under shall be subject to all terms and conditions of the Uniform Domestic Straight Bill of Lading."  (Doc. 29-2, Attachment A-1.)  The bill of lading further states: "Shipper hereby certifies that he is familiar with terms and conditions of the said bill of lading set forth in the classification or tariff which governs the transportation of this shipment and the terms and conditions are hereby agreed to by shipper and accepted for himself and his assigns."  Id.  Under the description of articles, the bill of lading states: "Item 60000 Class 85, RVNX $2.40."  Id.  According to an affidavit submitted by SRT's employee Jerry E. McEntire, Jr., "RVNX" means "Released Value Not To Exceed" and is used to designate a per pound limit of liability of any claim against the carrier. (McEntire Aff., doc. 29-2 ¶10.)  Exel

3

disputes that the term "RVNX" was intended to or may be read to limit SRT's liability.  (See Doc. 37 at 5.)

On November 5, 2010 Exel filed this action against SRT.  The Complaint caption states that the action was filed by "EXEL, INC. f/u/b/o Sandoz INC."  (Doc. 2 at 1.)  Exel alleges that Sandoz "has assigned all of its rights to Exel with regard to the recovery against SRT for the lost Shipment."  (Doc. 2 ¶ 14.)  The Complaint asserts in Count III that the plaintiff is entitled to relief pursuant to the Carmack Amendment, 49 U.S.C. § 14706, et seq. for the lost shipment.  Counts I and II are state-law breach of contract and bailment claims.  Count IV seeks a declaratory judgment that the master agreement determines the value of the lost shipment.

In a December 15, 2011 Order (doc. 24), the Court granted defendant's motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Claims I, II, and IV were dismissed on the grounds that plaintiff's exclusive remedy is under the Carmack Amendment.  (Doc. 24 at 14, 17.)  This order was based in part on the court's belief that plaintiff Exel sought solely to stand in the shoes of the shipper, Sandoz Inc., with rights no greater than those which could be asserted by Sandoz.  At the summary judgment stage, Exel asserted its individual rights under the master agreement, which does contain language that may create obligations independent of the shipper-carrier relationship and may fall outside the governance of the Carmack Amendment.  The Court concluded that the complaint does articulate a claim of individual rights under the master agreement sufficient to support a state law claim for breach of contract.  Based on these findings, the Court engaged in a *sua sponte* reconsideration of its December 15 Order and ordered supplemental briefs on the issue of whether plaintiff's state law

claims are preempted. This *sua sponte* reconsideration extends only to the dismissal of Count IV, which asks the court to declare that SRT is liable under the liability clause of the master agreement. (See Doc. 31-1, Attachment A ¶ 4.) Though Count IV requests declaratory judgment, the Court finds that it states a claim for breach of the master agreement and construes it accordingly.

**II.      Legal Standard**

The Court's order granting defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c) (doc. 24) is before the court for *sua sponte* reconsideration of that order. See doc. 49. A motion for judgment on the pleadings pursuant to Rule 12(c) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998) ("The standard of review applicable to motions for 'judgment on the pleadings' under Fed. R. Civ. Pro. 12(c) is the same *de novo* standard applicable to motions to dismiss under Rule 12(b)(6)."). All well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

A motion for judgment on the pleadings is directed solely to the complaint and any exhibits attached to it. Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion for judgment on the pleadings. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(c) if there is no law to support the claims made, or if the facts alleged are insufficient to

5

state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted).

When the complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Legal Analysis

#### A. The Carmack Amendment

6

"The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887 and addresses the liability of common carriers for goods lost or damaged during a shipment . . . ." Shao v. Link Cargo (Taiwan) Limited, 986 F.2d 700, 704 (4th Cir. 1993).  The goal of the law "was to facilitate shippers' recoveries against carriers for damage to transported cargo." Intransit, Inc. v. Excel North American Road Transport, Inc., 426 F.Supp.2d 1136, 1140 (D. Or. 2006).

The Carmack Amendment requires carriers to issue a receipt or bill of lading for cargo and establishes carrier liability: "[A]ny . . . carrier that delivers the property and is providing transportation or service subject to [the Carmack Amendment is] liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for the actual loss or injury to the property caused by [a carrier.]" 49 U.S.C. § 14706(a)(1).

> Though the default liability established by the Carmack Amendment is for "actual loss or injury," shippers and carriers may limit liability in specific situations: [A] carrier providing transportation or service . . . may . . . establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation. 49 U.S.C. § 14706(c)(1)(A).

B.     **Federal Preemption**

"In general, a federal law may preempt a state law in any of the following three scenarios.  First, a federal statute may expressly preempt the state law.  Second, a federal law may impliedly preempt a state law.  Third, preemption results from an actual conflict between a federal and a

state law." Garcia v. Wyeth-Ayerst Labs., 385 F.3d 961, 965 (6th Cir. 2004) (citations omitted). Because the Carmack Amendment does not expressly preempt state-law claims like those at issue here, plaintiff's contract claims can only be preempted if congress has implied their preemption or if they conflict with federal law.

            *i.*     *Implied Preemption*

"Implied preemption occurs 'if a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it . . . .'" Gibson v. Am. Bankers Ins. Co., 289 F.3d 943, 949 (6th Cir. 2002) (quoting Pub. Intervenor v. Mortier, 501 U.S. 597, 605 (1991)). The Carmack Amendment broadly regulates the liability of a carrier under a bill of lading. See Adams Express Co. v. E.H. Croninger, 226 U.S. 491, 505-06 (1913). Within a certain field, this regulation is sufficiently pervasive to imply preemption of state regulation and state causes of action. See REI Transp., Inc. v. C.H. Robinson Worldwide, Inc., 519 F.3d 693, 697 (7th Cir. 2008) (citing Adams Express, 226 U.S. at 505) ("The Carmack Amendment generally preempts separate state-law causes of action that a shipper might pursue against a carrier for lost or damaged goods."). The question is whether Exel's breach of contract claim, arising under the master agreement, falls within the Carmack Amendment's field of implied preemption. The parties have directed the court to no controlling cases directly on point, and none appear to exist. A small number of courts in other jurisdictions from which the court may draw guidance have considered related issues.

A handfull of cases deal with indemnity and liability contracts between brokers and carriers. In Intransit v. Excel North American Road Transport, Inc., the District of Oregon

considered a breach of contract claim brought by a broker against a carrier. 426 F.Supp.2d 1136, 1138 (D. Or. 2006). The plaintiff, a shipping broker, had arranged for the defendant to deliver merchandise to a Wal-Mart distribution center. Id. When the defendant arrived late with the merchandise, "Wal-Mart rejected the shipment and took a setoff of $28,869.19 against [the broker] for unrelated shipments." Id. The broker brought suit against the carrier to recover, *inter alia*, under the indemnity clause of the brokerage agreement. Id. The court held that Congress had not intended to preempt indemnity claims brought by brokers against carriers because the indemnity "action is sufficiently removed from a shipper or some other party who has rights under the bill of lading to sue a carrier for damage to goods shipped." Id. at 1141. The court interpreted the Carmack Amendment to preempt claims between shippers and carriers, but held that indemnity claims between brokers and carriers stemmed from a different type of relationship that fell outside of Carmack's preemptive field. See id.

The Court of Appeals of Georgia followed similar logic to affirm summary judgment granted on a contract claim brought by a broker. In Edwards Bros. v. Overdrive Logistics, the broker had brought a breach of contract claim against a carrier that had delivered a load of chicken that was rejected because it was not adequately refrigerated. 581 S.E.2d 570, 571 (Ga.App. 2003). The shipper sold the chicken to other buyers at a loss. Id. The shipper recovered some of its loss through voluntary payments by the carrier, the rest it withheld from subsequent payments to the broker. Id. The broker filed a breach of contract suit against the carrier. Id. The brokerage agreement, similar to the one at issue in this case, established that "[the carrier] will be liable to [the broker] and/or shipper for any loss or damage." Id. at 572.

9

Like the court in Intransit, the Edwards court held that the contract claim was not preempted by the Carmack Amendment: "[The broker] is not seeking damages under the bill of lading . . . . Because the Carmack Amendment was enacted to protect the rights of shippers suing under a receipt or bill of lading, not brokers, it does not preempt Overdrive's breach of contract claim in this case." Id.

Other courts have reached the opposite conclusion, holding that breach of contract claims between brokers and carriers are preempted by the Carmack amendment. See, e.g., Dominion Resource Services, Inc. v. 5k Logistics, Inc., no. 3:09-cv-315, 2010 WL 679845, at *1 (E.D. Va. Feb. 24, 2010) (holding that the only remedy available to the broker was one arising under the Carmack Amendment).

This Court finds the logic of Intransit and Edwards Brothers more persuasive.  Here, the master agreement between Exel and SRT is a negotiated contract that establishes an ongoing business relationship between sophisticated parties.  As in Intransit and Edwards Brothers, the contract does not focus on shipping under a bill of lading, but instead establishes the basics of a brokerage relationship.  As in those cases, this relationship falls outside of the shipper-carrier relationship and outside of the preemptive field of the Carmack Amendment.

Defendant points to a number of cases that describe the field preempted by the Carmack Amendment in sweeping terms but none of these cases directly address a breach of contract claim brought by a broker against a carrier and they do not compel a different result.  See Adams Express, 226 U.S. at 499 (Carmack Amendment preempts directly conflicting state law regarding carrier liability to shipper); Smith v. United Parcel Service, 296 F.3d 1244 (11th Cir. 2002)

10

(shippers' state claims against carrier preempted); Rini v. United Van Lines, 104 F.3d 502 (1st Cir. 1997) (shipper's state claim against carrier preempted); Shao v. Link Cargo, 986 F.2d at 705 (same); W.D. Lawson & Co. v. Penn Cent. Co., 456 F.2d 419 (6th Cir. 1972) (common-law claims preempted in suit between shipper and carrier); Schneider Elec. USA, Inc. v. Landstar Inway, Inc., No. 1:11-cv-801, 2012 WL 1068170 (S.D. Ohio Mar. 29, 2012) (contract claim brought by shipper against carrier preempted); Great W. Cas. Co. v. Flandrich, 605 F.Supp.2d 955 (S.D. Ohio 2009) (breach of contract claim brought by shipper's insurer against carrier preempted); Cent. Transp Intern., Inc. v. Alcoa, Inc., No. 6-cv-11913-DT, 2006 WL 2844097 (E.D. Mich. Sept. 29, 2006) (state claims brought by shipper against carrier preempted).

      *ii.    Conflict Preemption*

The plaintiff's contract claim is not subject to implied preemption by the Carmack Amendment, nor is it preempted under a conflict preemption analysis. "Conflict preemption refers to circumstances 'where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Wimbush v. Wyeth, 619 F.3d 632, 643 (6th Cir. 2010) (quoting Rollins v. Wilson County Gov't, 154 F.3d 626, 629 (6th Cir. 1998)). In this case, a contract that establishes liability between a broker and carrier is not at odds with the goals of the Carmack Amendment. The federal law seeks to "create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." Shao v. Link Cargo, 986 F.3d at 704. The Court in Intransit held that the indemnity contract at issue there did

not conflict with this goal because the action was "sufficiently removed from a shipper or some other party who has rights under the bill of lading" and so did not undercut the purposes of the Carmack Amendment–to regulate the shipper-carrier relationship. 426 F.Supp.2d at 1141. The court further found that the contract did not put the uniform system established by the Amendment at risk: "[I]n this case, the alleged liability arises from a contract that will not be interpreted differently from one jurisdiction to the next . . . ." Id. Similar logic may be applied in this case. Carriers face no risk of patchwork regulation by being allowed to enter into brokerage contracts that establish liability to shipping brokers. To the contrary, such arrangements may simplify and clarify liability between the parties. Nor does this contract undercut the system of liability that Congress has established under the Carmack Amendment.

        iii.        *Other Arguments*

Defendant SRT argues that if plaintiff's contract claim is not preempted, then double recovery will be available against SRT. That is not a possible outcome of this case. Because the shipper has assigned its claim for the lost cargo to the plaintiff, defendant need not be concerned about a separate action by Sandoz, and Exel seeks recovery here either under the bill of lading or the master agreement, not both. Plaintiff does not seek damages in an amount that could represent double recovery. (Doc. 1 at 7.)

**IV.**    **Conclusion**

Based on the foregoing analysis, the Order of December 15, 2011 (doc. 24) is VACATED with respect to Count IV. Defendant's motion for partial judgment on the pleadings (doc. 6) is DENIED with respect to Count IV. In light of this order, both plaintiff's and defendant's

motions for summary judgment are denied without prejudice, and may be resubmitted should the parties so choose.

  IT IS SO ORDERED.

                 S/ James L  Graham
                 James L. Graham
                 UNITED STATES DISTRICT JUDGE

Date: July 27, 2012