IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Exel, Inc., f/u/b/o Sandoz, Inc., | Case No. 2:10-cv-994 |
|       Plaintiff, | Judge Graham |
|   v. | |
| | Magistrate Judge Abel |
| Southern Refrigerated Transport, Inc., | |
|       Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Stay Execution of Judgment (doc. 114). For the reasons that follow, the Court will GRANT IN PART AND DENY IN PART the Defendant's Motion to Stay Execution of Judgment (doc. 114). The Court will GRANT the Defendant 60 days in which to post a supersedeas bond in the amount of $7,212,185.65.

**I.    Background**

The Court's August 26, 2014 Opinion and Order (doc. 112) sets forth the background of the instant case. Relevant here, the Court's Opinion and Order (1) granted summary judgment to the Plaintiff on its state law breach of contract claim; (2) dismissed the Plaintiff's Carmack Amendment claim; and (3) denied the Defendant's motion for summary judgment. The Court entered judgment in favor of the Plaintiff in the amount of $5,890,338.82 plus prejudgment interest and costs. Shortly thereafter, the Defendant filed a Motion to Stay Execution of Judgment (doc. 114). In its Motion, the Defendant requests that the Court stay execution of the judgment and waive the posting of a supersedeas bond.

1

**II.** **Discussion**

The Defendant argues that the Court should stay execution of judgment in this case and waive Federal Rule of Civil Procedure 62(d)'s supersedeas bond requirement. The Defendant emphasizes that, under Rule 62(d), the Court has the discretion to determine the amount of the bond necessary to stay execution and may stay execution of the judgment with no bond requirement. According to the Defendant, it is a subsidiary of a publicly traded company that has significant financial resources. Consequently, the Defendant asserts that waiver of the bond requirement is appropriate because its ability to pay the judgment is so obvious that it would be a waste to require it to pay the cost of the bond. In support of this assertion, the Defendant presents its holding company's 2013 Annual Report and 2014 Quarterly Report.

The Plaintiff contends that the Defendant has failed to demonstrate "extraordinary circumstances" that would justify waiver of Rule 62(d)'s bond requirement in this case. In the Plaintiff's view, the Defendant has offered conclusory arguments regarding its ability to satisfy the judgment in this case. To protect its financial interests pending appeal, the Plaintiff insists that the Court should require the Defendant to post a full bond.

A.  *Waiver of the bond requirement is not appropriate in this case*

Rule 62(d) provides:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d). "The purpose of [Rule 62(d)] . . . is to ensure 'that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed.'" Cohen v. Metro. Life Ins.

Co., 334 F. App'x. 375, 378 (2nd Cir. 2009) (quoting Cleveland Hair Clinic Inc. v. Puig, 104 F.3d 123, 125 (7th Cir. 1997)).

> For the appellee, Rule 62(d) effectively deprives him of his right to enforce a valid judgment immediately. Consequently, the appellant is required to post the bond to provide both insurance and compensation to the appellee. The supersedeas bond protects the non-appealing party from the risk of a later uncollectible judgment and also provides compensation for those injuries which can be said to be the natural and proximate result of the stay. Therefore, Rule 62(d) establishes not only the appellant's right to a stay, but also the appellees right to have a bond posted. Because of Rule 62(d)'s dual protective role, a full supersedeas bond should almost always be required.

Hamlin v. Charter Tp. of Flint, 181 F.R.D. 348, 351 (E.D. Mich. 1998) (internal citations and quotations omitted).

"Rule 62(d) entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right." Arban v. West Pub. Corp., 345 F.3d 390, 409 (6th Cir. 2003) (citing Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 759 (D.C. Cir. 1980)). However, "the Rule in no way necessarily implies that filing a bond is the only way to obtain a stay. It speaks only to stays granted as a matter of right, it does not speak to stays granted by the court in accordance with its discretion." Arban, 345 F.3d at 409 (internal quotation marks omitted). Courts have the inherent authority to modify or waive the supersedeas bond requirement. Hamlin, 181 F.3d at 353 (citing Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1367 (9th Cir. 1991); Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 758 (D.C. Cir. 1980)); 11 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2905 (3d ed. 2014).

Courts may waive the bond requirement entirely, but "[t]he Sixth Circuit has not defined a specific test to guide the Court's discretion when considering whether to grant an unsecured stay." Buckhorn Inc. v. Orbis Corp., No. 3:08–cv–459, 2014 WL 4377811, at *1 (S.D. Ohio

3

Sept. 3, 2014). In Arban, the Sixth Circuit affirmed a district court's waiver of the bond requirement, stating that "an inflexible requirement of a bond would be inappropriate . . . where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money." 345 F.3d at 409 (internal quotation marks omitted). The court emphasized "the vast disparity between the amount of the judgment in this case and the annual revenue of the group of which [the defendant] is a part" as the basis for its finding that the district court did not abuse its discretion in waiving the bond requirement. Id.

In the absence of appellate guidance, district courts within the Sixth Circuit have required a party seeking waiver of the bond requirement to demonstrate "extraordinary circumstances" that would justify such a waiver. See e.g., Chang Lim v. Terumo Corp., No. 11–cv–12983, 2014 WL 2051219, at *2 (E.D. Mich. May 19, 2014); Hamlin, 181 F.R.D. at 353. Under this approach, "extraordinary circumstances" include "a showing by the appellant that his 'ability to pay the judgment is so plain that the cost of the bond would be a waste of money,' or that the bond requirement 'would put [appellant's] other creditors in undue jeopardy.'" Cheng Lim, 2014 WL 2051219, at *2 (quoting Hamlin, 181 F.R.D. at 353)).[1]

The party seeking waiver of the bond requirement has the burden "to objectively demonstrate the reasons" for such a waiver. Hamlin, 181 F.R.D. at 353. See also 11 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2905 (3d ed. 2014) ("[T]he burden is on the party seeking a waiver to demonstrate that the judgment is not at risk and the

---

[1] Some district courts within the Sixth Circuit have adopted the Seventh Circuit's five factor test in Dillon v. City of Chicago, 866 F.2d 902 (7th Cir. 1988) to determine whether the waiver of a supersedeas bond is appropriate. See e.g., Buckhorn Inc., 2014 WL 4377811, at *2. To determine whether waiver of the bond requirement is appropriate under the Dillon test, courts consider: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position. 866 F.2d at 904–05.

bond will not be waived if that is not sufficiently established"). In these circumstances, "[t]he opposing party has no obligation to introduce evidence to the contrary." Hamlin, 181 F.R.D. at 353.

Having reviewed the parties' arguments, the Court concludes that the Defendant has not demonstrated "extraordinary circumstances" that would justify waiver of the bond requirement in this case. The Court's primary concern in this case is the lack of evidence of the Defendant's, rather than its parent company's, financial health. The Defendant repeatedly asserts that it is a subsidiary of Covenant Transportation Group, Inc. (CVG), and that CVG will satisfy the judgment in this case. The evidence presently before the Court indicates that CVG is a publicly traded company with annual revenue of approximately $685 million. CVG 2013 Annual Report at 24, doc. 114-2. Over the previous five years, CVG's net income has ranged from a loss of $20 million up to a profit between $5 to $10 million. Id. at 2. However, CVG is a non-party in the instant case and the Defendant identifies no evidence that CVG is obligated to satisfy the Defendant's debts or that CVG will not challenge its liability for the judgment in this case. The Defendant cites a CVG press release, which discusses CVG's intent to increase its reserves by $7-$8 million to cover the judgment in this case. See CVG Press Release, doc. 114-1. But this statement of intent carries little weight for purposes of ensuring that the Plaintiff's judgment is satisfied should it be upheld on appeal. Absent additional evidence, the Court finds that a supersedeas bond is necessary in the present case.

B.  *Amount of the supersedeas bond*

The parties dispute the appropriate amount of a supersedeas bond in this case. The Plaintiff maintains that a supersedeas bond should include the full amount of the judgment, pre-

judgment interest, post-judgment interest, and estimated additional recoverable monies. Because the Court entered judgment on the Plaintiff's state law breach of contract claim, the Plaintiff argues that the Court should consider the Ohio statutory rate for prejudgment interest. The Plaintiff asserts that November 2008 is the operative date for calculating prejudgment interest. Calculating the prejudgment interest based on Ohio statutory rates, the Plaintiff argues that a full supersedeas bond should include $5,890,338.82 (principal amount) plus $1,445,533.70 (prejudgment interest).

In response, the Defendant reiterates its opposition to the requirement of a full supersedeas bond in this case. First, the Defendant argues, the amount of the supersedeas bond should be limited to 40% of the monetary judgment awarded in this case. Second, the Defendant contends, at most, the bond in this case should be the principal amount plus post-judgment interest calculated at the applicable federal rate. The Defendant emphasizes that prejudgment interest should not be considered in calculating the supersedeas bond amount in this case. According to the Defendant, the prejudgment interest remains unknown, and the Plaintiff's calculation is erroneous. The Defendant maintains that because prejudgment interest was not discussed at the November 7, 2014 hearing, establishing the proper prejudgment interest amount will require another hearing.

The Court begins from the premise that a full supersedeas bond should include damages, prejudgment interest, and postjudgment interest. See Jack Henry & Associates, Inc. v. BSC, Inc., 753 F. Supp. 2d 665, 673–74 (E.D. Ky. 2010) aff'd, 487 F. App'x 246 (6th Cir. 2012) (rejecting posting of supersedeas bond that included only damages but not prejudgment interest and requiring that supersedeas bond include "reasonable estimate of the postjudgment interest that will accrue during the pendency of the appeal"); 11 Charles A. Wright and Arthur R. Miller,

Federal Practice and Procedure § 2905 (3d ed. 2014) (Although the amount of the bond usually will be set in an amount that will permit satisfaction of the judgment in full, together with costs, interest, and damages for delay, the courts have inherent power . . . to provide for a bond in a lesser amount or to permit security other than the bond").

In a diversity case, prejudgment interest is calculated based on law of the forum state. In re ClassicStar Mare Lease Litig., 727 F.3d 473, 497 (6th Cir. 2013) (citing Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co., 491 F.3d 320, 333 (6th Cir. 2007)). In contrast, a court hearing a federal claim applies federal common law rules. In re ClassicStar Mare Lease Litig., 727 F.3d at 497 (citing Snow v. Aetna Ins. Co., 998 F.Supp. 852, 856 (W.D. Tenn. 1998)). However, even where a federal claim is at issue, "district courts are free to use state law to calculate prejudgment interest[.]" In re ClassicStar Mare Lease Litig., 727 F.3d at 497 (citing Ford v. Uniroyal Pension Plan, 154 F.3d 613, 619 (6th Cir. 1998)). "[T]he method for calculating prejudgment interest remains in the discretion of the district courts, and they are free to 'look to state law for guidance in determining the appropriate prejudgment interest rate' if they so choose." In re ClassicStar Mare Lease Litig., 727 F.3d at 497 (quoting Ford, 154 F.3d at 619).

Here, the Plaintiff's Complaint included both federal and state claims. The Court entered judgment in the Plaintiff's favor on its state law breach of contract claim and dismissed the Plaintiff's federal claim. Consequently, the Court will apply Ohio law in calculating the prejudgment interest component of the supersedeas bond in this case.

The Ohio Revised Code provides for the payment of prejudgment interest at a defined statutory rate "when money becomes due and payable upon any . . . instrument of writing, . . . and upon all judgments . . . for the payment of money arising out of . . . a contract." O.R.C. § 1343.03(A). Under this statute, the Sixth Circuit has held that "money damages become due and

payable on a contract at the time of the breach." Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG, 196 F. App'x 366, 378 (6th Cir. 2006). "[I]n the absence of a statutory provision or specific agreement to the contrary, only simple interest accrues." Mayer v. Medancic, 104, 919 N.E.2d 721, 724 (Ohio 2009) (collecting cases). As the Supreme Court of Ohio has explained, "the award of prejudgment interest is compensation to the plaintiff for the period of time between the accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." Royal Elec. Constr. Corp. v. Ohio State Univ., 652 N.E.2d 687, 692 (Ohio 1995).

Here, the parties' agreement provided that the Defendant would be liable to the Plaintiff for "loss, damage or injury" to the pharmaceuticals in the Defendant's possession for those pharmaceutical's replacement value. MTSA at ¶¶ 3, 9, doc. 97-6. The pharmaceuticals were lost or stolen while in the Defendant's possession on November 8, 2008. Joint Stipulation of Facts at ¶3(b), doc. 94-4. Consequently, the Defendant breached its contract with the Plaintiff on November 8, 2008. Under the Court's ruling on the summary judgment motion, the money damages (the replacement value of the pharmaceuticals) became due and payable on that date. See Tharos Sys., 196 F. App'x at 378. The Court calculates the prejudgment interest based on this date.

The principal amount of damages in this case is $5,890,338.82. The Court estimates that the Plaintiff is entitled to prejudgment interest in the amount of $1,315,901.68 for the period

between November 8, 2008, the date of breach, and August 26, 2014, the date of entry of judgment.[2]

The United States Code sets the rate for postjudgment interest in federal court. See 28 U.S.C. § 1961; Estate of Riddle v. S. Farm Bureau Life Ins. Co., 421 F.3d 400, 409 (6th Cir. 2005). That statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The statute further provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." Id. The postjudgment interest rate "appl[ies] to both the damages and the prejudgment interest." Jack Henry & Assocs., 753 F. Supp. 2d at 674 (citing Caffey v. Unum Life Ins. Co., 302 F.3d 576, 586 (6th Cir. 2002)).

A supersedeas bond "should include a reasonable estimate of the postjudgment interest that will accrue during the pendency of the appeal." Jack Henry & Assocs., 753 F. Supp. 2d at 673. The Sixth Circuit's median time from the filing of a notice of appeal to disposition is nine months. See Federal Court Management Statistics June 2014 – Court of Appeals available at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/courts-appeals-june-2014.aspx. The Court estimates that the Pl72aintiff is therefore entitled to $5,945.15 in

---

[2] The estimate of prejudgment interest is calculated by adding the following sums:

$5,890,338.82 x .0134 = $78,930.54   (2008 – two months of interest at the statutory rate of .67% per month)
$5,890,338.82 x .05 = $294,516.94    (2009 – one year of interest at the statutory rate of 5% per annum)
$5,890,338.82 x .04 = $235,613.55    (2010 – one year of interest at the statutory rate of 4% per annum)
$5,890,338.82 x .04 = $235,613.55    (2011 – one year of interest at the statutory rate of 4% per annum)
$5,890,338.82 x .03 = $176,710.16    (2012 – one year of interest at the statutory rate of 3% per annum)
$5,890,338.82 x .03 = $176,710.16    (2013 – one year of interest at the statutory rate of 3% per annum)
$5,890,338.82 x .02 = $117,806.78    (2014 – eight months of interest at the statutory rate of .25% per month)

The annual statutory interest rates can be found at http://www.tax.ohio.gov/ohio_individual/individual/interest_rates.aspx.

postjudgment interest.[3] Based on the Court's estimates of prejudgment and postjudgment interest, the Court concludes that a supersedeas bond of $7,212,185.65 is appropriate in this case.

The Court addresses the Defendant's arguments for modifying or waiving the supersedeas bond requirement. First, the Defendant argues that the Plaintiff is entitled to a supersedeas bond in the amount of 40% of the damages in this case. In support of this position, the Defendant cites Star Lock Sys., Inc. v. Triteq Lock & Sec., L.L.C., No. 207CV797, 2009 WL 3086471 (S.D. Ohio Sept. 23, 2009). According to the Defendant, "[i]n Star Lock, the court set the bond for less than 40% of the monetary judgment and did so despite the defendant's noted repeated failure to meet financial obligations to the plaintiff and the possibility that the defendant's financial situation could worsen while the appeal was pending." Def.'s Supp. Mem. at 2, doc. 125. Further, the Defendant emphasizes, "[e]ven though the bond amount was well-below the value of the judgment, Star Lock found that it would provide full protection to the prevailing party while avoiding any 'penalty' to defendant for pursuing its right to appeal." Id.

In Star Lock, the court awarded final judgment to the plaintiff with damages and interest in an amount over $400,000. 2009 WL 3086471, at *1. Approximately $300,000 of that judgment was contained in an escrow account. Id. The court emphasized the importance of the escrow account in its decision, stating:

> [d]espite Plaintiff's conjecture that Defendant will likely disrupt Plaintiff's post-appeal collection of the escrow funds, the Court declines to order a bond in the full amount of the judgment. Much of the judgment is protected by the escrow funds, which Plaintiff can undoubtedly obtain following the appeal, even if the

---

[3] The estimate of postjudgment interest is calculated by multiplying the following:

```
   $7,206,240.50         (damages and prejudgment interest)
x  .0011                 (statutory rate of interest pursuant to 28 U.S.C. § 1961)
x  .75                   (nine out of twelve months for disposition of appeal)
```

The statutory interest rates for postjudgment interest can be found at http://www.uscourts.gov/FormsAndFees/Fees/PostJudgmentInterestRates.aspx.

> path toward ultimately securing those funds could prove unnecessarily complicated.

Id. at *2. In conclusion, the court found that requiring the defendant to post a bond to cover the amount of the judgment not contained in the escrow account would "provide full protection to the Plaintiff" while avoiding any "penalty" to the defendant. Id.

In the instant case, there is no escrow account or any comparable means of securing the Plaintiff's judgment present in this case. The court's ruling in Star Lock was a sound exercise of its discretion to modify the supersedeas bond requirement based on the facts before it. But because similar facts are not present here, it does not alter this Court's decision to require a full supersedeas bond in this case.

Second, the Defendant maintains that prejudgment interest should not be considered in determining the amount of a supersedeas bond in this case. But as the Court has previously noted, a full supersedeas bond generally includes damages, prejudgment interest, and postjudgment interest. See Jack Henry & Associates, Inc., 753 F. Supp. 2d at 673–74; 11 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2905 (3d ed. 2014).

Third, the Defendant takes issue with the Plaintiff's calculation of prejudgment interest, arguing that "April 8, 2013 is the earliest date from which prejudgment interest should run . . . because it is the first date that the [damages] figure appeared. It is the first date that an amount became due and payable." Def.'s Supp. Mem. at 4. However, the fact that the damages figure awarded in this case was not presented until April 8, 2013 does not prevent the Plaintiff from collecting prejudgment interest prior to that date. See Royal Elec. Constr. Corp., 652 N.E.2d at 692 ("the award of prejudgment interest is compensation to the plaintiff for the period of time between the accrual of the claim and judgment, regardless of whether the judgment is based on a

11

claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court").

Further, the Defendant argues, on the record before the Court, the date on which prejudgment interest began to accrue is unclear. But the Ohio Revised Code provides for the payment of prejudgment interest at a defined statutory rate "when money becomes due and payable." O.R.C. § 1343.03(A). And in considering Ohio's prejudgment interest statute, the Sixth Circuit has held that "money damages become due and payable on a contract at the time of the breach." Tharo Sys., Inc., 196 F. App'x at 378. There is no dispute that the Defendant breached its agreement with the Plaintiff on November 8, 2008. See Joint Stipulation of Facts at ¶3(b). Consequently, it follows that November 8, 2008 is the proper start date for determining the prejudgment interest in this case.

### III.  Conclusion

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Defendant's Motion to Stay Execution of Judgment (doc. 114). The Court GRANTS the Defendant 60 days in which to post a supersedeas bond in the amount of $7,212,185.65.

IT IS SO ORDERED.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE:  December 5, 2014